**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOE, an individual | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO: |
| | ) | |
| Raja Haider, an individual, | ) | |
| | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Jane Doe ("Plaintiff"), by and through her undersigned counsel, the Chicago Alliance Against Sexual Exploitation, states her Complaint against Defendant Raja Haider ("Defendant") as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this action for damages and injunctive relief to restrain and remedy Defendant's outrageous, harassing, and menacing behavior designed to injure Plaintiff, including his non-consensual distribution of intimate images in violation of 15 U.S.C § 6851 and 740 ILCS 190/1 et seq, as well as his sexual assault of Plaintiff in violation of the Illinois Gender Violence Act (740 ILCS 82/1 et seq), his intentional infliction of emotional distress towards Plaintiff, his intrusion upon Plaintiff's seclusion, and his negligence towards Plaintiff. Plaintiff seeks to pursue this action using a pseudonym to maintain confidentiality of her identity. Plaintiff will file a motion

1

seeking leave to proceed pseudonymously, and to require that all court filings and public disclosures in this action preserve her anonymity.[1]

## PARTIES

2.      Plaintiff Jane Doe is an individual, proceeding under alias Jane Doe. Plaintiff is a citizen of South Korea, who resided in Chicago at all times relevant to this action.

3.      Upon information and belief, Defendant Raja Haider is an individual who currently lives in Chicago, Illinois and resided in Chicago at all times relevant for this Complaint.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the federal claim in this matter pursuant to 28 U.S.C. § 1331 (federal question) and the remaining claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

5.      In addition, this Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (a)(2) (diversity of citizenship) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and it is between a citizen of South Korea and a citizen of Illinois.

6.      This court has personal jurisdiction because the Defendant committed tortious acts within the State of Illinois and Plaintiff's lawsuit arises out of or relates to Defendant's contacts with Illinois.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C § 1391 because the events underlying the causes of action alleged herein occurred in this district.

---

[1]      This matter implicates significant privacy interests that are unique to litigants who are victims of sexual abuse and sexual assault. *See Doe v. Blue Cross & Blue Shield of Wisc.,* 112 F.3d 869, 872 (7th Cir. 1997) (". . .fictitious names are allowed when necessary to protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses.") Plaintiff has suffered, and continues to suffer, serious emotional distress and physical consequences and harm stemming from Defendant's actions. Plaintiff would be placed at further risk of harm if her name were to be associated with these proceedings.

## FACTUAL BACKGROUND

8. On or around May 25, 2024, Plaintiff was walking home after going grocery shopping. Defendant, a stranger, approached her and began making conversation with Plaintiff. During the conversation, Defendant introduced himself as "Jack" and asked Plaintiff if she lived nearby. Plaintiff explained that she lived nearby but was currently looking for a new place to live. Defendant said he owned apartments and could help her find a new place to live. Plaintiff was worried about finding a place to live because her lease would expire at the end of the summer, and she was going to be staying in the United States through fall of 2024. Plaintiff had been struggling to find a solution to her housing situation and felt relieved that someone was offering to help her.

9. At one point, Plaintiff mentioned that she was a visiting student from South Korea. Upon hearing this, Defendant said that there was a Korean bar nearby. Plaintiff told Defendant that she was 20 years old. Defendant told her that if she wanted, he could help sneak her into the Korean bar and they could talk more about Plaintiff's housing situation. Plaintiff asked Defendant if he could drive her home, since she had a lot of grocery bags. At this point, Plaintiff did not feel afraid of Defendant – she thought that he was being friendly and helpful.

10. Defendant drove Plaintiff to her apartment. She went inside and dropped off the groceries. Defendant remained in his car. When Plaintiff came back to Defendant's car, he told Plaintiff that he would drive them to the Korean bar.

11. Defendant did not drive Plaintiff to the Korean bar. Instead, he pulled over at an unknown side street and kissed Plaintiff without her consent. Plaintiff felt offended and afraid, but she did not want to get out of the car in an unknown area.

12. After kissing Plaintiff, Defendant told her that he had a nearby apartment "for sale" and offered to show Plaintiff around under the pretext of helping Plaintiff look for a new apartment.

3

13.    When Plaintiff and Defendant got to the apartment (4730 N. Kimball Ave, Apt 403, Chicago, IL 60625-8331), Defendant gave Plaintiff a tour of the apartment, which he said he owned and would consider leasing to her. Defendant then led Plaintiff to the bedroom and told her to lie down so that he could give her a massage. Plaintiff felt uncomfortable and hesitated, but Defendant asked her to lie down again. Plaintiff did so. Defendant began massaging Plaintiff's legs and moved his hand toward her pelvis. Defendant began trying to remove Plaintiff's clothes. Plaintiff physically stopped Defendant's hand from touching her pelvis, but Defendant kept trying to undress her and touch her vagina over her clothes. Plaintiff did not want to sexually engage with Defendant, but she was worried that Defendant would get violent if she resisted since he was ignoring her attempts to stop him. Plaintiff was terrified; she was alone in a strange apartment with a stranger. Plaintiff felt frozen as Defendant removed Plaintiff's clothes and proceeded to penetrate Plaintiff's vagina with his penis. Defendant did not use a condom.

14.    After the assault, Defendant and Plaintiff walked back to Defendant's car and Defendant drove Plaintiff home. Defendant bought Plaintiff a hamburger on the way home, using a credit card. When he did so, Plaintiff saw that Defendant's name was not "Jack," as he had introduced himself, but was instead "Raja Haider."

15.    During the drive to Plaintiff's home, Defendant pressured Plaintiff to add him on Snapchat and share her location with him. Plaintiff felt uneasy doing so – she felt violated and humiliated. Defendant told her sharing locations with strangers was very common in the United States, and she could be in danger if she did not share this information with him. Additionally, Defendant told Plaintiff that he would not be able to help her with her housing problems without this information. Plaintiff eventually shared her Snapchat username and location with Defendant.

16. Between May 25, 2024 and June 28, 2024, Defendant sent Plaintiff messages via Snapchat nearly every day. In these messages, Defendant often pressured Plaintiff to meet. Sometimes Defendant would go to Plaintiff's apartment, sometimes he would send Ubers to Plaintiff's apartment. These Ubers would take Plaintiff to Defendant's apartment where the first assault happened. Whenever Plaintiff and Defendant met in person, Defendant wanted to have sex. Plaintiff never wanted to have sex, but she felt trapped in this situation. Between May 25, 2024, and June 28, 2024, Plaintiff and Defendant had sex approximately 2-3 times a week.

17. In late May 2024, when Plaintiff and Defendant were together in person, Defendant told Plaintiff that if she wanted, he could make her a fake ID. Plaintiff told him she was not interested, as she was turning 21 in a few months. Defendant continued to pressure Plaintiff to send him her personal information and a copy of her passport. Plaintiff refused multiple times but eventually sent Defendant the information he was requesting.

18. Between June 28, 2024 and July 16, 2024, Plaintiff tried to distance herself from Defendant. Plaintiff constantly wanted to end the sexual contact with Defendant. She avoided seeing him and came up with excuses about why they could not meet.

19. On or around July 16, 2024, Defendant messaged Plaintiff and told her that he had used her passport information to make her a fake "Green Card" (Permanent Resident Card (PRC)). Defendant showed up at Plaintiff's residence. He showed her the fake PRC in person; Defendant placed the fake PRC on her desk. Plaintiff told Defendant that she was not interested in seeing him. Defendant hugged Plaintiff and said he wanted to make "one last good memory" with her. Plaintiff tried to push Defendant away, but Defendant continued to stress that he was not going to have sex with her. Defendant tried to kiss Plaintiff; she refused. Defendant forced Plaintiff to the bed and began to undress her. She tried to push him away. Defendant took off her underwear and began

5

performing oral sex on Plaintiff. Plaintiff was disgusted and scared. Plaintiff feared that Defendant would get increasingly physical, so she stopped resisting. Defendant penetrated Plaintiff's vagina with his penis and sexually assaulted her until he orgasmed. Plaintiff was shaking and felt that she was at her breaking point. She yelled at Defendant, saying that he raped her and to get out of her apartment. When Defendant left, he took the fake PRC with him.

20.     On or around July 17, 2024, Defendant messaged Plaintiff and threatened to report Plaintiff to the authorities over the fake PRC. Defendant said that he would erase the fake PRC and Plaintiff's information if she did what he wanted. Plaintiff felt horrified and scared. Plaintiff went to Defendant's apartment to try and placate him.

21.     Defendant told Plaintiff he would not erase Plaintiff's personal information unless they had sex. Plaintiff refused. Defendant then insisted she give him oral sex. Plaintiff repeatedly told him no and told him "I can't do it...please can I not do it?" Defendant insisted that without oral sex, he would continue to blackmail Plaintiff. Plaintiff was afraid for her physical safety, and afraid that Defendant would report her to the authorities. Due to her fear of Defendant and his threats, Plaintiff performed oral sex on Defendant. After Plaintiff performed oral sex on Defendant, Defendant penetrated Plaintiff's vagina with his penis, despite her repeatedly asking and pleading with him not to have sex. Afterwards, Defendant sent Plaintiff home in an Uber. Plaintiff felt completely violated, and terrified that Defendant would use her personal information against her.

22.     Between on or around July 17, 2024, and August 15, 2024, Defendant messaged Plaintiff via Snapchat a few times. Plaintiff did not respond.

23.     On or around August 15, 2024, Defendant contacted Plaintiff via Snapchat and told her that all conversations and sexual conduct that occurred in his apartment had been recorded. These recordings were made without Plaintiff's knowledge or consent. Defendant also continued

to blackmail Plaintiff over the fake PRC. In these messages, Defendant stated "My house and my car is equipped with cameras...everything you did or said is recorded[.] I'm just giving you the proof ... I can be [your] worse [sic] enemy too."

24. In addition to these threats, via Snapchat, Defendant sent Plaintiff multiple videos and pictures of her that had been taken without her knowledge or consent while she was at Defendant's apartment. These videos and pictures featured Plaintiff engaging in sexual conduct and sexual activity. Plaintiff is identifiable in these videos and pictures as they show her face and her entire naked body. This was the first time that Plaintiff was made aware that Defendant had cameras in his apartment and had recorded her without her consent.

25. In addition to these materials, Defendant also sent Plaintiff an intimate picture of her that she had not consented to. This picture features her face and entire naked body. Plaintiff is identifiable in this photo. Plaintiff had seen Defendant take the photo without her consent and had asked him to delete it immediately. Defendant had told Plaintiff that he had deleted the picture. This was the first time Plaintiff was made aware Defendant had not deleted the intimate picture of her. Plaintiff felt mortified and terrified.

26. Later in the conversation, Defendant sent Plaintiff additional concerning messages, including "do you want to finish up on a good note, or do you just want to make it worse." The conversation ended with Defendant sending a message that stated: "Like I said I would love to be your good friend and continue good memories and make sure you are happy. But I would hate to be one of your enemies." Following this interaction, Plaintiff blocked Defendant on Snapchat.

27. In September 2024, Defendant sent Plaintiff the intimate materials via two different accounts on Instagram and continued to threaten her. These Instagram messages were sent via "vanish mode," which erases the messages after being read. Defendant used an alias for these

7

accounts, but to Plaintiff's knowledge, no one else would have had access to these materials. Additionally, no one else would have had a reason to threaten and blackmail Plaintiff. If anyone besides Defendant had access to these materials, they would only have gained access through Defendant's dissemination of the materials.

28. Plaintiff experienced significant emotional distress and mental anguish from Defendant's actions. Plaintiff feared for her physical safety and suffered harm to her physical and mental health as a result of these traumatic experiences.

## COUNT I
### (Unlawful Disclosure of Intimate Images (15 U.S.C § 6851)

29. Plaintiff re-alleges and incorporates herein by reference the foregoing Paragraphs 1 through 28 as though set forth fully herein.

30. Defendant disclosed intimate images of Plaintiff when he sent these materials to her via Snapchat and via Instagram. Plaintiff never consented to the creation of the materials and, with the exception of a single photo, did not previously know they existed and had never seen them before. The only material that Plaintiff previously knew existed was a single intimate photo of her that Defendant had taken without her consent. As soon as she realized that photo existed, she had asked Defendant to delete it. Defendant told Plaintiff that the photo had been deleted. Plaintiff did not know Defendant still had the photo in his possession until he disclosed it to her via Snapchat and Instagram.

31. The sexually explicit photos and videos disclosed by Defendant feature the uncovered genitals, pubic area, anus, or post-pubescent female nipple of Plaintiff. They also feature Plaintiff, an identifiable individual, engaging in sexually explicit conduct.

32. Plaintiff is identifiable in the intimate materials because they feature her face and other identifiable characteristics. A person other than Plaintiff would be able to recognize Plaintiff in the materials.

33. Defendant disclosed these materials using means or facilities of interstate commerce – Snapchat and Instagram. Defendant disclosed these materials without Plaintiff's consent.

34. Defendant knew, or recklessly disregarded, that Plaintiff had not consented to the disclosure of these materials.

35. Defendant's actions caused substantial harm to Plaintiff, including emotional distress.

36. Defendant's actions violated 15 U.S.C § 6851.

37. As a result of the violation of this statute, Plaintiff is entitled to recover actual damages sustained, or liquidated damages in the amount of $150,000, and the costs of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, and equitable relief.

### COUNT II
**(Non-Consensual Dissemination of Private Sexual Images (740 ILCS 190/1))**

38. Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs 1 through 28 as though set forth fully herein.

39. Defendant is a person over the age of 18, who threatened to disseminate, and did disseminate, private sexual images of Plaintiff without her consent.

40. The materials that Defendant threatened to disseminate, and did disseminate, show Plaintiff engaging in sexual conduct or activity and show her fully unclothed genitals, pubic area, and anus.

41. Each of the materials threatened to be disseminated, or actually disseminated, by Defendant were obtained under circumstances in which Plaintiff had a reasonable expectation of privacy.

42. Plaintiff is identifiable in these materials because they feature her face and other identifiable characteristics. A person other than Plaintiff would be able to recognize Plaintiff in the materials.

43. Defendant threatened to disseminate, and did disseminate, these materials without Plaintiff's consent, and Defendant knew, or recklessly disregarded, that Plaintiff had not consented to any dissemination, that the images were private sexual images, and that Plaintiff was identifiable in the materials.

44. Defendant's actions caused substantial harm to Plaintiff, including severe emotional distress and fear.

45. Defendant's actions violate Illinois' Civil Remedies for Nonconsensual Dissemination of Private Sexual Images Act, 740 ILCS 190/1, et seq.

46. As a result of the violation of this statute, Plaintiff is entitled to recover actual damages sustained, including damages for emotional distress, or statutory damages not to exceed the amount of $10,000, and the costs of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, and equitable relief.

### COUNT III
**(Illinois Gender Violence Act (740 ILCS 82/1 et seq.)**

47. Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs 1 through 28 as though set forth fully herein.

48.     Defendant's conduct on or around May 25, 2024, July 16, 2024, and July 17, 2024, constituted gender-based violence pursuant to the Illinois Gender Violence Act (740 ILCS 82/5) because:

a.  the sexual assaults that took place on or around May 25, 2024, July 16, 2024, and July 17, 2024, constituted acts of violence and physical aggression satisfying the elements of battery under the laws of Illinois that were committed, at least in part, on the basis of Plaintiff's sex; and

b.  the sexual assaults that took place on or around May 25, 2024, July 16, 2024, and July 17, 2024, constituted physical intrusions of a sexual nature under coercive conditions satisfying the elements of battery under the laws of Illinois.

49.     As a direct result of the gender-related violence that Defendant perpetrated against her, Plaintiff suffered certain injuries and losses including, but not limited to, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, emotional distress and other non-pecuniary losses and intangible injuries, all of which are compensable under the Illinois Gender Violence Act.

**COUNT IV**
**(Intentional Infliction of Emotional Distress)**

50.     Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs 1 through 28 as though set forth fully herein.

51.     Defendant's above-described conduct, including his secret recordings of Plaintiff, his sexual assaults of Plaintiff on or around May 25, 2024, July 16, 2024, and July 17, 2024, his threats to publish and distribute the materials at issue, his threats to report Plaintiff to authorities regarding the fake PRC, and the sending of the materials to Plaintiff via Snapchat and Instagram

was intentional and reckless. Defendant knew or should have known that his actions would cause emotional distress to Plaintiff.

52. Defendant's misconduct was so extreme and outrageous as to go beyond all possible bounds of decency, and a reasonable person would view Defendant's misconduct as intolerable in a civilized society.

53. Defendant intended to cause Plaintiff harm and acted with reckless disregard of the probability that Plaintiff would suffer damage.

54. As a direct and proximate result of Defendant's aforesaid intentional and reckless acts, Plaintiff suffered significant damage.

## COUNT V
### (Intrusion Upon Seclusion)

55. Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs 1 through 28 as though set forth fully herein.

56. By filming Plaintiff without her consent, especially as she was engaging in sexual conduct, Defendant intruded upon Plaintiff's privacy.

57. Defendant pried into, recorded, and weaponized Plaintiff's private actions and matters without her knowledge or consent.

58. Defendant's intrusion was offensive and would be offensive to a reasonable person.

59. Defendant's intrusion has caused Plaintiff emotional distress and suffering.

## COUNT VI
### (Negligence)

60. Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs 1 through 28 as though set forth fully herein.

61.    At all times material to this Complaint, Defendant had a duty to exercise reasonable care to not harass Plaintiff and to not threaten to disseminate Plaintiff's personal and intimate information and materials – including but not limited to intimate photographs and videos.

62.    Notwithstanding his duty, Defendant harassed Plaintiff and threatened to publicly disseminate personal and intimate information and materials about Plaintiff.

63.    As a direct and proximate result of Defendant's aforesaid careless and negligent acts, Plaintiff suffered harm and severe emotional distress.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE,** Plaintiff, Jane Doe, prays for the following relief:

A.    That the Court enter judgment in favor of Plaintiff, Jane Doe, and against Defendant Raja Haider;

B.    That the Court award Plaintiff, Jane Doe, damages against Defendant Raja Haider, in an amount to be determined at trial, but no less than $150,000 statutory damages for each violation of federal law under 15 U.S.C § 6851;

C.    That the Court award Plaintiff, Jane Doe, compensatory damages against Defendant Raja Haider, in an amount to be determined at trial, but no less than $10,000 statutory damages for each violation of Illinois state law under 740 ILCS 190/25(a)(1);

D.    That the Court award Plaintiff injunctive relief under 740 ILCS 190/25(b) and/or 15 U.S.C § 6851, including but not limited to ordering Defendant to destroy and delete any and all intimate materials of Plaintiff in his possession, custody or control;

13

E.     That the Court award Plaintiff, Jane Doe, compensatory damages in an amount to be determined at trial for Defendant's violations of the Illinois Gender Violence Act, Defendant's intentional infliction of emotional distress, Defendant's intrusion upon seclusion, and Defendant's negligence;

F.     That the Court award Plaintiff punitive damages in an amount to be determined at trial;

G.     That the Court award Plaintiff her attorneys' fees and costs; and

H.     Such other relief as this court deems appropriate.

### JURY DEMAND

Plaintiff demands trial by jury on all issues for which a jury trial is allowed.

Dated: July 14, 2026                                    Respectfully submitted,

                                                        JANE DOE


                                                        By: *Allison Munk*
                                                             One of Her Attorneys

Deborah Rzasnicki Hogan
Allison Munk
Chicago Alliance Against Sexual Exploitation
307 N. Michigan Ave, Suite 1020
Chicago, IL 60601
Telephone: (773) 244-2230
dhogan@caase.org
amunk@caase.org
Attorneys for Plaintiff Jane Doe

14